UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADRIAN EVANS,

    Plaintiff,

v.                                                                           Case No. 8:24-cv-195-WFJ-LSG

RICKY DIXON, SECRETARY,
DEPARTMENT OF CORRECTIONS,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court on Defendant Ricky Dixon's motion to dismiss *pro se* Plaintiff Adrian Evans's civil-rights complaint. (Doc. 15). Although afforded the opportunity, Mr. Evans did not file an opposition. (Doc. 16). Upon careful consideration, the Court denies the motion to dismiss.

**I.  Background**

For purposes of this motion, the Court accepts the factual allegations in the complaint as true. Mr. Evans is a Florida prisoner incarcerated at Avon Park Correctional Institution. (Doc. 1 at 4). He practices Islam, which requires him to "grow a free-flowing beard." (*Id.* at 5). In October 2023, prison officials ordered him to "shave his beard to a [length] not exceeding" a half inch. (*Id.*) This directive followed from the grooming policy of the Florida Department of Corrections ("FDOC"), which states that "[a]ll inmates shall elect either to be clean shaven or to grow and maintain a half-inch beard." (Doc. 15-3 at

7). Mr. Evans alleges that, by forcing him to shave his beard, prison officials "substantially burden[ed] [his] sincere Muslim religious [beliefs]." (Doc. 1 at 5). Accordingly, he seeks "a religious exemption from the [FDOC's] grooming policy [that would] permit [him] to grow a free-flowing beard." (*Id.*)

Mr. Evans sues Ricky Dixon, the FDOC Secretary, in his official capacity. (*Id.* at 2). He asserts that the forced shaving of his beard violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Free Exercise Clause of the First Amendment. (*Id.* at 3).

The Secretary moves to dismiss the complaint, arguing that (1) Mr. Evans failed to exhaust his administrative remedies, and (2) the complaint fails to state a claim under RLUIPA or the First Amendment. (Doc. 15). As noted above, Mr. Evans did not respond to the motion to dismiss. Nevertheless, the Court must decide whether the complaint is subject to dismissal based on the papers in the record. *See Giummo v. Olsen*, 701 F. App'x 922, 924 & n.2 (11th Cir. 2017) (noting that dismissing a complaint solely because a motion to dismiss is technically unopposed would be an abuse of discretion); *Tucker v. United States-U.S. Postal Serv.*, No. 2:22-cv-13-SPC-NPM, 2022 WL 911580, at *1 (M.D. Fla. Mar. 29, 2022) ("[C]ourts cannot grant 12(b)(6) motions just because they are unopposed.").

## II. Standard of Review

A complaint withstands dismissal under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This

standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration should be limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

### III. Analysis

#### A. Exhaustion

The Secretary contends that Mr. Evans failed to comply with the pre-suit exhaustion requirements of the Prison Litigation Reform Act ("PLRA"). (Doc. 15 at 4-7). The PLRA requires prisoners to exhaust "such administrative remedies as are available" before filing suit in federal court. 42 U.S.C. § 1997e(a). "[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a [42 U.S.C.] § 1983 lawsuit." *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The "applicable procedural rules" "are defined by the prison grievance process itself, not by the PLRA." *Sims v. Sec'y, Fla. Dep't of Corr.*, 75 F.4th 1224, 1230 (11th Cir. 2023). Thus, courts "look to the requirements of the applicable prison grievance system to determine the boundaries of proper exhaustion." *Id.*

The Secretary does not dispute that Mr. Evans exhausted the FDOC's grievance procedure. That procedure requires prisoners to "(1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the FDOC." *Dimanche*, 783 F.3d at 1211. Mr. Evans alleges—and the Secretary does not contest—that he followed this three-step process. (Doc. 1 at 6-8).

The Secretary contends, however, that Mr. Evans was required to pursue an additional procedure to exhaust his remedies. According to the Secretary, Mr. Evans "seeks to change the rule that governs the permitted length of an inmate's beard." (Doc. 15 at 5). Thus, the Secretary maintains, Mr. Evans was required not only to complete the three-step grievance process, but also to submit a petition to initiate rulemaking under Fla. Stat. § 120.54(7). (*Id.* at 4-6). That provision allows any person "having substantial interest in an agency rule [to] petition an agency to adopt, amend, or repeal a rule." Fla. Stat. § 120.54(7)(a). The Secretary says that Mr. Evans was on notice of this requirement because the FDOC's inmate handbook states that, "[i]f you wish to request that the Department adopt, amend, or repeal a rule, you must also file a Petition to Initiate Rulemaking." (Doc. 15-3 at 18). Because Mr. Evans did not file a petition to initiate rulemaking, the Secretary contends that he failed to "exhaust all of the administrative remedies available to him." (Doc. 15 at 6).

The Secretary has not established that Mr. Evans failed to exhaust his administrative remedies. *See Whatley v. Smith*, 898 F.3d 1072, 1082 (11th Cir. 2018) ("The burden . . . is on the defendant to show that the plaintiff has not exhausted properly his administrative

remedies."). Another court in this district recently rejected a similar exhaustion defense. In *Denson v. Dixon*, the plaintiff alleged that the FDOC's grooming policy "prohibiting male inmates from growing beards longer than half an inch unlawfully interfere[d] with his statutory right under [RLUIPA] to practice his Sunni Muslim religion." *Denson v. Dixon*, No. 2:17-cv-648-JES-NPM, 2023 WL 5200482, at *1 (M.D. Fla. Aug. 14, 2023). The defendant sought dismissal for failure to exhaust administrative remedies. *Id.* at *5. It was "undisputed that [the plaintiff] exhausted the FDOC's grievance procedures, but [the defendant] argue[d] [that the plaintiff] was also required to challenge the grooming policy by filing a petition to initiate a rulemaking change under Florida's Administrative Procedure Act." *Id.* The court disagreed, reasoning that the plaintiff was "not seeking to alter an FDOC rule." *Id.* at *6. Instead, the operative complaint made "clear that [the plaintiff sought] an exemption from—not a change of—the grooming policy." *Id.* Thus, the court held that the plaintiff's "exhaustion of the FDOC grievance procedures satisfied the PLRA's pre-suit requirements." *Id.*

The same logic applies here. Like the plaintiff in *Denson*, Mr. Evans does not seek to amend or repeal the FDOC's grooming policy. Rather, he requests "a religious exemption from the [] grooming policy [that would] permit [him] to grow a free-flowing beard." (Doc. 1 at 5). Because Mr. Evans is not seeking to amend or repeal the grooming policy, he was not required to file a petition to initiate rulemaking. *See Cook v. Jones*, No. 3:16-cv-568-TKW-EMT, 2019 WL 6868982, at *3 (N.D. Fla. Nov. 22, 2019) (inmate not required to submit petition to initiate rulemaking because the "measure of relief for prevailing on his claim would be the issuance of his [prayer] mat, not any change to the

rules of the FDOC"), *adopted by* 2019 WL 6841976 (N.D. Fla. Dec. 16, 2019). Therefore, Mr. Evans properly exhausted his administrative remedies by completing the FDOC's three-step grievance process.

### B. First Amendment

The Secretary argues that Mr. Evans fails to "state an actionable First Amendment claim as to [the] FDOC's beard grooming policy." (Doc. 15 at 9). "To plead a valid free exercise claim, [a plaintiff] must allege that the government has impermissibly burdened one of his sincerely held religious beliefs." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007). "Although prison inmates retain protections afforded by the First Amendment's Free Exercise Clause, prison officials may impose limitations on an inmate's exercise of sincerely held religious beliefs if the limitations are 'reasonably related to legitimate penological interests.'" *Johnson v. Brown*, 581 F. App'x 777, 780 (11th Cir. 2014) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

Mr. Evans states a plausible free exercise claim. He alleges that the tenets of Islam require him to "grow a free-flowing beard," that prison officials enforced the FDOC's grooming policy by ordering him to "shave his beard to a [length] not exceeding" a half inch, and that as a result he was forced to "contravene his Muslim belief[s]." (Doc. 1 at 5). Taken as true, these allegations are sufficient to plead that the Secretary "impermissibly burdened one of [Mr. Evans's] 'sincerely held religious beliefs.'" *Watts*, 495 F.3d at 1294. The question becomes whether the application of the grooming policy to Mr. Evans was "reasonably related to legitimate penological interests." *Johnson*, 581 F. App'x at 780. To make that determination, the Court asks "(1) whether there is a valid, rational connection

between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to [Mr. Evans]; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an exaggerated response to prison concerns." *Hakim v. Hicks*, 223 F.3d 1244, 1247-48 (11th Cir. 2000).

At this early stage of the litigation, the Court "cannot evaluate whether the alleged restrictions on [Mr. Evans's] religious practice were reasonable in light of the[se] four . . . factors." *Johnson*, 581 F. App'x at 781; *see also Saleem v. Evans*, 866 F.2d 1313, 1316-17 (11th Cir. 1989) (prisoner's free exercise claim should not be dismissed for failure to state a claim unless the complaint's allegations show the state has a legitimate justification for regulating a prisoner's religious practices or the claim is "so facially idiosyncratic" that no state justification is required). For example, the Court cannot yet determine "whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally." *Hakim*, 223 F.3d at 1247. Nor can the Court evaluate whether the grooming policy "represents an exaggerated response to prison concerns." *Id.* at 1248. In these circumstances, "the facts surrounding [the] justification for [the grooming policy] must be developed to determine whether impermissible infringement has occurred." *Saleem*, 866 F.2d at 1317. Accordingly, the Court declines to dismiss the free exercise claim at this stage. *See Tootle v. Long*, No. 1:20-cv-235-SPB-RAL, 2021 WL 3610034, at *5 (W.D. Pa. July 19, 2021) ("[O]ften a factual record is necessary to assess whether the regulation or practice is reasonably related to

legitimate penological interests."), *adopted by* 2021 WL 3603621 (W.D. Pa. Aug. 13, 2021).

### C. RLUIPA

The Court likewise concludes that Mr. Evans states a plausible RLUIPA claim. RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). Under RLUIPA, "[o]nce a plaintiff proves that a challenged practice substantially burdens his religious exercise, the burden shifts to the defendant to show that the policy is the least restrictive means of furthering a compelling government interest." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 532 (11th Cir. 2013). "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party."[1] *Holt v. Hobbs*, 574 U.S. 352, 364-65 (2015).

As noted above, Mr. Evans alleges that by ordering him to "shave his beard to a [length] not exceeding" a half inch, prison officials forced him to "contravene his Muslim belief[s]," which require "a free-flowing beard." (Doc. 1 at 5). Accepted as true, these allegations are sufficient to plead that the application of the grooming policy to Mr. Evans "substantially burden[ed] his religious exercise." *Rich*, 716 F.3d at 532. The burden thus "shifts to the [Secretary] to show that the policy is the least restrictive means of furthering

---

[1] "RLUIPA provides greater religious protection than the First Amendment." *Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022).

a compelling government interest." *Id.* This "calls for an individualized, context-specific inquiry." *Smith v. Owens*, 848 F.3d 975, 981 (11th Cir. 2017).

The Secretary acknowledges that "Florida courts have permitted religious exceptions to [the] FDOC's half-inch beard grooming policy under RLUIPA." (Doc. 15 at 10 (collecting cases)). The Secretary maintains, however, that the relief Mr. Evans seeks is "distinguishable" because he "seeks to grow a 'free-flowing' beard, not a beard of any defined/estimated length." (*Id.*) According to the Secretary, because the FDOC has "a compelling government interest in disallowing" free-flowing beards, Mr. Evans "fails to state an actionable RLUIPA claim." (*Id.* at 11).

This argument is unpersuasive. The Secretary is correct that Mr. Evans seeks to grow a "free-flowing beard" in accordance with his Muslim faith. (Doc. 1 at 5). But this is not necessarily fatal to his RLUIPA claim. In *Denson v. Dixon*, the plaintiff—an FDOC inmate—sought to grow "a beard of unrestricted length." 2023 WL 5200482, at *3. After a two-day bench trial, the court found that the Secretary had "not shown that applying the grooming policy to [the plaintiff], and denying his request for an exemption from the grooming policy, [was] the least restrictive means to further any of [the FDOC's] compelling governmental interests." *Id.* at *9. Thus, the court ruled that the plaintiff was "entitled to a declaratory judgment that he be allowed to grow an untrimmed beard," and that he had "satisfied all the elements required for a permanent injunction barring the FDOC from enforcing the grooming policy against [him]." *Id.*

The Secretary may or may not be able to satisfy his burden under RLUIPA in Mr. Evans's case. At this early stage of the litigation, however, the Court cannot say that

RLUIPA forecloses relief simply because Mr. Evans seeks to grow a "free-flowing beard." (Doc. 1 at 5). Further factual development is required before the Court can conduct the "individualized, context-specific inquiry" called for by RLUIPA. *Smith*, 848 F.3d at 981; *see also Heywood v. Dixon*, No. 4:23-cv-474-AW-MAF, 2024 WL 3676386, at *2 (N.D. Fla. Aug. 2, 2024) ("It could be that even if [plaintiff's] allegations turn out to be true, the burden [on his religious exercise] was still permissible [under RLUIPA]. But the government must show that, which has not happened at this stage [*i.e.*, the motion-to-dismiss stage]."). Thus, the Court declines to dismiss the RLUIPA claim.[2]

## IV. Conclusion

Accordingly, it is **ORDERED** that:

1. The Secretary's motion to dismiss (Doc. 15) is **DENIED**.

2. The Secretary must answer the complaint (Doc. 1) within fourteen days of the date of this order.

**DONE** and **ORDERED** in Tampa, Florida, on October 16, 2024.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

---

[2] The Secretary cites *Smith v. Owens*, 13 F.4th 1319 (11th Cir. 2021), but that case does not support dismissal of the RLUIPA claim at the pleading stage. *Smith* was an appeal from a bench trial. The Eleventh Circuit upheld as "not clearly erroneous" "[t]he district court's determination that it was reasonable for the [Georgia Department of Corrections] to conclude that allowing [the plaintiff] to grow an untrimmed beard would be both unmanageable and dangerous." *Id.* at 1322. But that ruling was based on the evidence presented at trial, including the plaintiff's "extensive disciplinary record" and criminal history. *Id.* at 1329. No such evidence is before the Court in Mr. Evans's case.