**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ADRIAN EVANS,

      Plaintiff,

v.
                                                  Case No. 8:24-cv-195-WFJ-LSG

RICKY DIXON, SECRETARY,
DEPARTMENT OF CORRECTIONS,

      Defendant.

_____/

**<u>ORDER</u>**

This matter comes before the Court on Defendant Ricky Dixon's motion for summary judgment. (Doc. 29). *Pro se* Plaintiff Adrian Evans filed a response in opposition. (Doc. 31). After careful consideration, the Court grants the motion for summary judgment.

**I.    Background**

Mr. Evans is a Florida prisoner serving a total sentence of life imprisonment for armed robbery, attempted armed robbery, aggravated battery, and aggravated assault. (Doc. 29, Ex. A, at 2). He has been in the custody of the Florida Department of Corrections ("FDOC") since 2006. (*Id.*) Around 2011, Mr. Evans became a Muslim. (*Id.*, Ex. B, at 3). He alleges that his Muslim faith requires him to "grow a free-flowing beard." (Doc. 1 at 5).

In October 2023, prison officials ordered Mr. Evans to maintain his beard at a length "not exceeding" a half inch. (*Id.*; *see also* Doc. 29, Ex. B, at 4). This directive followed

from the FDOC's grooming policy, which states that "[a]ll inmates shall elect either to be clean shaven or to grow and maintain a half-inch beard." Fla. Admin Code § 33-602.101(4). The FDOC enacted its grooming policy in February 2015.[1] (Doc. 29, Ex. B, at 4). Mr. Evans alleges that, by forcing him to shave his beard, prison officials "substantially burden[ed] [his] sincere Muslim religious [beliefs]." (Doc. 1 at 5). Accordingly, he seeks "a religious exemption from the [FDOC's] grooming policy [that would] permit [him] to grow a free-flowing beard." (*Id.*)

Mr. Evans sues Ricky Dixon, the FDOC Secretary, in his official capacity. (*Id.* at 2). He asserts that the forced shaving of his beard violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Free Exercise Clause of the First Amendment. (*Id.* at 3).

In October 2024, the Court denied the Secretary's motion to dismiss, and the case proceeded to discovery. (Docs. 18, 20). The Secretary now moves for summary judgment, arguing that (1) Mr. Evans's RLUIPA claim fails because he "cannot demonstrate a substantial burden on his religious exercise" and the FDOC's grooming policy "is the least restrictive means of furthering a compelling governmental interest"; and (2) Mr. Evans's First Amendment claim fails because the grooming policy "is reasonably related to legitimate penological interests." (Doc. 29 at 2). Mr. Evans filed a response in opposition. (Doc. 31).

---

[1] The grooming policy was a response to the Supreme Court's decision in *Holt v. Hobbs*, which held that the Arkansas Department of Correction "violate[d] RLUIPA insofar as it prevent[ed] petitioner from growing a half-inch beard in accordance with his religious beliefs." 574 U.S. 352, 364, 369 (2015).

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If met, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). To satisfy its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine factual dispute. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the nonmoving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). In addition, the Court must resolve any reasonable doubts in the nonmoving party's favor. *Id.*

Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587.

### III.   Analysis

#### A.   RLUIPA

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). Under RLUIPA, "[o]nce a plaintiff proves that a challenged practice substantially burdens his religious exercise, the burden shifts to the defendant to show that the policy is the least restrictive means of furthering a compelling government interest." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 532 (11th Cir. 2013). The least-restrictive-means test "requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt v. Hobbs*, 574 U.S. 352, 364-65 (2015). RLUIPA "mandates an individualized inquiry." *Smith v. Owens*, 13 F.4th 1319, 1328 (11th Cir. 2021). "The government must demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 574 U.S. at 363.

For purposes of this order, the Court assumes that the FDOC's grooming policy substantially burdens Mr. Evans's sincere religious beliefs. Even with that assumption, the Secretary is entitled to summary judgment because there is no genuine dispute that the

grooming policy "is the least restrictive means of furthering a compelling government interest." *Rich*, 716 F.3d at 532.

The Secretary argues that the grooming policy serves the FDOC's interest in safety by minimizing the flow of contraband in its facilities, reducing the risk of dangerous physical altercations between inmates, and allowing for the quick and reliable identification of inmates. (Doc. 29 at 12-16; *see also* Doc. 29, Ex. B, at 17). "It is well established that states have a compelling interest in security and order within their prisons." *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *see also Smith*, 13 F.4th at 1325 n.2 (noting that the Eleventh Circuit has "characterized . . . as compelling" government interests related to "safety," "security," and "minimizing the flow of contraband"). Thus, the question is whether the grooming policy is the least restrictive means of furthering the FDOC's compelling interest in prison safety. The answer to that question is yes.

By way of illustration only, here is the famed band ZZ Top with two members sporting free-flowing beards:



First, the grooming policy helps control the flow of contraband into and within FDOC facilities. In support of his motion for summary judgment, the Secretary submits a declaration from Carl Kirkland, Jr., the FDOC's Deputy Director of Institutional Operations. (Doc. 29, Ex. E). Mr. Kirkland explains that "[e]ven without allowing inmates to have free-flowing beards, [the FDOC] already intercept[s] a significant amount of contraband." (*Id.* at 5). For example, from January 2019 to June 2024, the FDOC confiscated 43,590 "shanks/bladed weapons," 44,383 cell phones, and 32,689 units of illegal drugs. (*Id.*) Mr. Kirkland states that "[t]he majority of these items could be hidden in free-flowing beards, and some of these items would not be detected even by a metal detector." (*Id.*) This concern is not theoretical. Mr. Kirkland notes that before the Virginia Department of Corrections "limited beard length" in the early 2000s, "inmates had hidden razor blades in their beards." (*Id.* at 6). Thus, as Mr. Kirkland points out, the grooming policy advances security by "limit[ing] the potential to conceal contraband in an inmate's free-flowing beard." (*Id.* at 2).

Mr. Evans responds that the FDOC could satisfy its security concerns by searching any free-flowing beards worn by inmates. (Doc. 31 at 3). But as the Secretary points out, such searches would present their own security risks. (Doc. 29 at 13-15). In support of this assertion, the Secretary submits an expert report from Brian Zawilinski, a former captain with the Connecticut Department of Corrections. (*Id.*, Ex. B). Mr. Zawilinski notes that half-inch beards—which are currently allowed in FDOC facilities—"can be inspected visually without physical contact." (*Id.* at 30). By contrast, a free-flowing beard cannot be "effectively searched visually." (*Id.* at 19). Instead, a physical inspection would be

necessary. (*Id.*, Ex. E, at 10-11). An officer would need to stand behind the inmate during the inspection, because "if the officer is in front of the inmate and his hands are up near the [inmate's] face, the officer's entire abdomen is exposed without any means of protection." (*Id.* at 11). As Mr. Zawilinski explains, "[s]earching a beard from behind . . . creates different challenges": "the restricted vision makes the search less effective, the officer may not see a danger obscured in the beard resulting in [him] getting cut or poked by a sharp object, and the officer remains vulnerable to attack from the inmate's head and legs." (*Id.*, Ex. B, at 21). Mr. Evans offers no evidence to rebut these concerns. Thus, he fails to show that his less-restrictive alternative—searching free-flowing beards—would "eliminate the [FDOC's] security . . . and safety concerns."[2] *Knight*, 797 F.3d at 945.

Second, as Mr. Kirkland explains, the grooming policy "protects inmates from each other by eliminating a free-flowing beard as something [that could be] grabbed by another inmate during a fight." (Doc. 29, Ex. E, at 2). Unlike a half-inch beard, a free-flowing beard "acts as a ponytail or handle on the face that can be used to control the head and subdue someone during an altercation." (*Id.*, Ex. B, at 28). Indeed, the Eleventh Circuit has recognized that "untrimmed beards" may "raise concerns about inmates . . . injuring each other by grabbing beards during altercations." *Smith*, 13 F.4th at 1329; *see also Knight*,

---

[2] Mr. Evans contends that Mr. Zawilinski's report cannot be considered on summary judgment because it is "unsworn." (Doc. 31 at 4). But this is not "a valid basis to strike or disregard the report" because Mr. Evans "makes no argument nor offers any reason why [the] report cannot be presented in an admissible form." *Kearney Constr. Co. LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 8:09-cv-1850-JSM-TBM, 2017 WL 2172200, at *2 (M.D. Fla. Apr. 19, 2017); *see also Townsend v. Marriott Hotel Servs., Inc.*, 634 F. Supp. 3d 1091, 1098 n.5 (M.D. Fla. 2022) (denying request to strike "unsworn" expert report because report was "capable of being reduced to admissible form through [expert's] trial testimony").

797 F.3d at 939 (describing testimony that "hair-length restrictions . . . prevent inmates from pulling each other's hair during fights"). Mr. Evans offers no rebuttal to this concern.

Third, the grooming policy prevents inmates from altering their appearance by "quickly remov[ing] . . . [their] beards." (Doc. 29 at 13). Mr. Zawilinski notes that a free-flowing beard could "be shaved off or altered within a few minutes, thus drastically changing the inmate's appearance" and potentially allowing him to evade apprehension after escaping. (*Id.*, Ex. B, at 19). Mr. Evans offers no less-restrictive alternative that would address this security concern. *See Smith*, 13 F.4th at 1326 (noting that, "to satisfy the least-restrictive-means test of RLUIPA," a prison system is "only required to prove that *petitioner's proposed alternatives* would not sufficiently serve its security interests"). Regardless, Mr. Zawilinski addresses the "suggest[ion] that if a lengthy beard is allowed, the agency can keep a clean-shaven photo and a photo of the beard at full length." (Doc. 29, Ex. B, at 19). He opines that this alternative would not sufficiently serve the FDOC's security concerns. (*Id.*) Specifically, an inmate's identity may need to be "expeditiously confirmed" in an "escape, assault, or hostage situation," and requiring officers to work from multiple photographs increases the risk of hesitation and misidentification. (*Id.*) Mr. Evans points to no evidence rebutting these concerns.

Finally, the Secretary has shown that "permitting [Mr. Evans] in particular to grow an untrimmed beard would harm [the FDOC's] interests in safety and security." *Smith*, 13 F.4th at 1329. Mr. Evans is serving a total sentence of life imprisonment for armed robbery, attempted armed robbery, aggravated battery, and aggravated assault. (Doc. 29, Ex. A, at 2). He has an extensive disciplinary record and has been found guilty of possessing

weapons and a cell phone, tampering with security devices, participating in a riot, fighting, and disobeying orders. (*Id.* at 5-6). Given Mr. Evans's criminal history and disciplinary record, the FDOC could reasonably conclude that allowing him to grow a free-flowing beard would be dangerous for prison security. *See Smith*, 13 F.4th at 1329 (prison officials legitimately concluded that allowing plaintiff to "grow an untrimmed beard" would be dangerous in light of his convictions for "murder and armed robbery" and his "extensive disciplinary record").

Mr. Evans argues that summary judgment is unwarranted because "the Federal Bureau of Prisons permit[s] religious beards and many states allow beards longer than a half inch." (Doc. 31 at 5). But he cites no evidence to support this assertion. *See Evanston Ins. Co. v. DCM Contracting, Inc.*, 441 F. Supp. 3d 1336, 1343 (N.D. Ga. 2020) ("[S]tatements in [a] brief do not suffice as evidence to defeat a motion for summary judgment."). Regardless, "[w]hile the practices of other institutions are relevant to the RLUIPA analysis, they are not controlling—the RLUIPA does not pit institutions against one another in a race to the top of the risk-tolerance or cost-absorption ladder." *Knight*, 797 F.3d at 947. Instead, the Secretary must show that the FDOC's "departure from the practices of other jurisdictions stems not from a stubborn refusal to accept a workable alternative, but rather from a calculated decision not to absorb the added risks that its fellow institutions have chosen to tolerate." *Id.* For the reasons explained above, the Secretary has met this burden.

In short, there is no genuine dispute that the FDOC's grooming policy "is the least restrictive means of furthering a compelling government interest" in prison safety and

security. *Rich*, 716 F.3d at 532. Therefore, the Secretary is entitled to summary judgment on the RLUIPA claim.

### B.      First Amendment

Mr. Evans also argues that prison officials violated the Free Exercise Clause of the First Amendment by barring him from growing a free-flowing beard. (Doc. 1 at 3). "If a prison's regulation passes muster under RLUIPA, however, it will perforce satisfy the requirements of the First Amendment, since RLUIPA offers greater protection to religious exercise than the First Amendment offers." *Smith v. Allen*, 502 F.3d 1255, 1264 n.5 (11th Cir. 2007), *overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021); *see also Annabel v. Campbell*, No. 24-1322, 2025 WL 1139564, at *3 (6th Cir. Apr. 2, 2025) ("Given th[e] lack of evidence [supporting plaintiff's RLUIPA claim], summary judgment was correctly granted to the defendants on this claim. And because the First Amendment is less protective than RLUIPA, [the] free-exercise claim necessarily fails as well."). Because Mr. Evans "fail[s] to present sufficient evidence to withstand summary judgment on his RLUIPA claim, it follows that summary judgment [is] also appropriate on his First Amendment claim." *Smith*, 502 F.3d at 1264 n.5.

## IV.    Conclusion

Accordingly, it is **ORDERED** that:

1. The Secretary's motion for summary judgment, (Doc. 29), is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of the Secretary and against Mr. Evans, to terminate any pending motions and deadlines, and to close the case.

**DONE** and **ORDERED** in Tampa, Florida, on March 2, 2026.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE